May it please the court when ruling on the rule I'm Cheryl Gordon McLeod I'm here on behalf of mr. Randall when ruling on the rule 29 motion the district court asked the government three times what was the agreement upon hearing the government's response the court said the evidence is quote very weak the co-conspirators were very uncertain and not very specific these are quotes and you're asking us to take big jumps to tie mr. Randall into all of this the district court denied that motion but the weaknesses that he identified remained and they underlie the two issues that I'd like to address here today and those are the insufficiency of the evidence to prove conspiracy and the spillover effect that that had on the two substantive counts counts two and three because of the Pinkerton instruction and the other issue I'd like to address is the insufficiency of the evidence to support the two-level enhancement for leadership with regard to the insufficiency of the evidence to prove conspiracy I'd like to put that in context factually because the government has taken the position that the main thing supporting the conspiracy is mr. Randall's supposed agreement to broker all of the wood that the three young men brought to him what the government is characterizing now on appeal as pretty much an exclusive brokering contract and if you look at the sites that they provide and I think it's er-212 er-235 and er-236 what you find is that it's not exclusive it's not brokering and it's actually not even a contract at all at er-212 Travis Reeves says is asked who are you gonna sell this wood this maple that you cut down to and he answers quote to Mark if he wanted it if he didn't want it I would sell it to Faith Farm well he's got two potential buyers there so it's not a brokering agreement it's sales that he's talking about he's got two not one so it's exclusive and he says as to Mark Randall I would sell it to him quote if he didn't want it it's not even a contract if we were here on a contract case we would call this illusory a buyer-seller isn't enough but what about in the evidence the marking of a fallen tree for proper cutting calling Faith Farm to allow the three co-defendants to use his permit and also acting with the intent to damage the tree when he marked it for cutting and with the intent to steal when he permitted the three to use his permit to cut the wood what do we do with those facts well what I'm arguing is that there's insufficient evidence of the conspiracy I didn't raise an insufficiency of evidence argument on the two substantive counts and the factors that you're reciting could be show sufficiently overt acts though I'm sorry it could be overt acts yes I agree it could be overt acts but it does not support the agreement and that's what I'm attacking and that's what the district court questions as well what's the agreement here the typically when there's proof of conspiracy the Ninth Circuit is looking at whether the defendant had a stake in the outcome that's what all the Ninth Circuit courts say cases say and they look at did the defendant benefit from the success of the venture did his success depend on the success of the others and did he share profits with the others the indications of conspiracy they go to it's but you know when you look at all the evidence of who this guy is you know if they had said if if all of the if Connie Callahan had done those things that she was tramping around in her high heels out in the woods it would be different but you know this guy there's a number of things that sort of make him you know the the maple tree man you know and his interested you know there's there's a lot of there's a lot of things that make this man different well there's a lot of your average defendant there's a lot of things that make the people from quilts seem different than your honor and part of that is the fact that a lot of them are interested in cutting maple and we know that because mr. post one of the supposed co conspirators said no I didn't learn about cutting maple from mr. Randall I learned about it from my grandfather we know it because Justin Reeves one of the co-conspirators said no I didn't learn about it from mr. Randall either I do it wrong the first time or something and then there was which I couldn't be used exactly which supports my argument I believe the government is arguing mr. Randall told them what to do and he was the organizer and they use that to show conspiracy as well as leadership well they didn't even follow I mean it was like organizing cats this sounds very much like a jury question grant government argues that this means this I argue it means this and the jury is instructed was there a plan to do to and I'm not attacking the sufficiency of the evidence on counts two and three but with regard to the conspiracy count is there a jury is there a jury question on whether there was an agreement there's no place in the transcript that the government has cited to you where there is an explicit agreement and the only implicit agreement that they have argued to you is this supposed exclusive brokering agreement which doesn't exist because the witnesses all use the word sales not brokering the witnesses all said well either him Faith Farm whatever so it's not exclusive it's it's like in the Johnson case from the Seventh Circuit the buyer-seller case yeah he might have bought it sometimes but not all the time it's even like Falcone the 1940 US Supreme Court case where as your honor said he mr. Randall is supplying some things to the conspiracy perhaps with knowledge of the conspiracy jury out on this I'm sorry was the jury out I don't know the answer to that I will try I guess I'm somewhat perplexed by the that it would need to be an exclusive arrangement I mean I I don't know why you can't have well the other ones may or may not be conspiracy but why these people couldn't have parallel deals going with different people or have parallel buyers but if he's if they're stuff and then they go out to the Olympic National Forest and he shows them where and how to cut then they come back and they hope they're gonna sell to him if he doesn't buy well that is gonna sell to somebody else why isn't that a conspiracy well exclusive does not net is not necessary to prove conspiracy agreed I was responding to the government's argument on that if he had told them where to go in the Olympic National Forest to cut had them bring the wood to him as part of an agreement and had profited from it that would be sufficient evidence to prove conspiracy there's no evidence that he profited from it he didn't get any money out of this and there's nobody in the record that ever says that they were expecting him to get a share of any of the profits as to telling the boys where to cut the wood I think that's er 248 that everybody's referring to and what you'll see there is a back-and-forth with one of the witnesses where the government is asking well did Mr. Randall ever tell you to go up to your dad Mr. Travis's dad's property to cut the wood and yeah he did he did he did and then in there is one question did he ever tell you to go to the National Forest he said well there's good wood up there that's the extent of the government citations to the record for their argument that Mr. Randall told the boys where to go cut wood there's good wood up in the National Forest there's no date attached to this and you've got to remember that the conspiracy is charged as a May 14th to May 18th of 2008 conspiracy so any evidence that they might have offered that was before that time might inform the jury but certainly doesn't prove an agreement on those five days in May I'm not sure how far I'm getting on the better touch that someone's efficiency of it I'd like I'd like to touch on Pinkerton very briefly though because if you do agree with me on count one for whatever reason there was a Pinkerton instruction and that of course tells the jury that they can convict even if he didn't do counts two and three if there an objection to it no and I want to as a supplemental authority on that because I had said in my opening brief that it's plain error review because there was no objection and I want to retract that Howard the Fifth Circuit case says if the Pinkerton instruction is properly given because at the time that it's going to the jury there's a conspiracy then you don't need an objection to preserve for review whether Pinkerton tainted the other counts Howard said at the time that the Pinkerton instruction went to the jury it was properly given because the jury was getting conspiracy count is your argument that that the Pinkerton instruction is no good if we hold that the conspiracy instruction was if there was insufficient evidence if there was insufficient evidence of conspiracy or alternative the Pinkerton instruction fails then the Pinkerton instruction must cause reversal of counts two and three because counts two and three were based on conspiracy plus somebody else did the other instruction did the other acts maybe I'm not being clear the Pinkerton instruction allows the jury to convict mr. Randall of the two substantive counts if he's convicted of conspiracy plus some member of the conspiracy did two and three so if he's not convicted of the conspiracy then there's no Pinkerton vicarious liability basis to convict him of counts two or three and the question becomes what do you do about it if you don't know whether the jury convicted him on the improper basis or convicted him on the proper basis and you need to look at Griffin and Yates to determine whether this is a legal problem or a factual problem what I would commend you to is the Henning case from the Sixth Circuit which says that the basis for Griffin's the basis for Griffin is the presumption that the jury is able to determine facts even if it's not able to determine law so if the jury is presented with two different factual theories one of which is insufficient and one of which is sufficient this court affirms the conspiracy evidence was insufficient that means in my view the jury erred the presumption that the jury knows how to evaluate the facts doesn't carry in this case with regard to conspiracy your whole case really does hinge on this conspiracy so the one question I had which you I think you ended on the conspiracy had to do well he never actually made any money off of it I'm sorry he didn't make any money off this deal well he was about to but then the whole thing blew up right so it seemed to me that he did intend to eventually pay them was my understanding from the testimony maybe I'm wrong but you don't have to like carry out the ultimate objective if the ultimate objective is in the cards and going to happen so could you address that aspect of the conspiracy yes I don't think it's clear that he was going to share any much less a larger share of the profits which I think is what you need to for the leadership enhancement the testimony showed that he didn't take the wood he looked at and he said I don't want it you refer the boys to faith farm they got $250 from faith farm who did they split it with each other none of it went back to Randall he didn't even get a finder's fee for sending them over to faith farm there was no guarantee that he was going to pay them for anything in fact they brought it to him in Travis Reeves testimony I think this is er 212 or 235 for him to look at and tell them if it was worth anything and if so that he might buy it from them and the word sale was used that's not a share of the profits that's not a stake in the venture that's buyer-seller and under Johnson and under Falcone that's not sufficient the only other thing I think that they said about that May 14th to 18th period is that they left one of the six rounds of wood with mr. Randall when they took the other five back what did you expect to have happen with that we expected him to pay us for it but then this whole thing come down that's a buyer-seller correct they didn't say we expected him to broker it so I don't have much time left but I do think that the leadership enhancement issue is is critical and a lot of the things I've said about the conspiracy apply to that except for one thing the government has to prove that he was leading or organizing the others the government has now conceded that they can't prove leadership in their brief at page 60 but the factors that go to the leadership enhancement are identical to the factors that go to the organizer enhancement u.s. versus Avila a case from this court says so so I would invite this court's attention to that and I'm going to try to reserve 30 seconds thank you back and forth on this one good morning your honors may it please the court my with respect to the sufficiency of the evidence regarding the conspiracy as this court knows full well there is very rarely evidence of an overt agreement for a criminal conspiracy so too in this case there is there is no evidence that everyone got together and formulated a you know express plan express contract of how their dealings were going to work so the circumstantial evidence it's a circumstance it's a circumstantial case there's no doubt but if you look at the three co-conspirators who testified what they testified to was that after receiving some instruction from mr. Randall mr. Randall directed them to where they would be a good place to go look for the wood in addition to on the Reeves property the evidence is unambiguous that he told them to go to go look in the Olympic National Forest okay so right there by directing them to go harvest wooden in the Olympic National Forest he knows full well that the wood they're gonna bring him or at least he should know is likely gonna be all right the testimony is unequivocal on that point and especially since this is sufficiency review to the expect to the intent excuse me to the extent that it's in any way ambiguous the government gets the benefit of that info what the thing that does seem I mean this is almost as counsel characterized it's not unfair to say it's really more like a buyer-seller why isn't it like that as we have no quarrel with the general that simply a buyer-seller relationship doesn't show a conspiracy what you have to have is some sort of expectation that the seller is gonna resale the property and there is evidence of that because all three conspirators testified that the reason they were selling it to Randall was because Randall quote had a buyer so Randall wasn't the end of the game they were gonna give it to Randall and Randall's gonna turn around and sell it to his specialty purchasers is there any agreement to share profits or is there any agreement here with respect to the money there's no express agreement with the money but it can again express or inexpress or implied where would I find that you would you know you would find it from the inferences to be drawn from the way their transactions work which is they turned they gave the money to Randall Randall pays them and then Randall turn around and sells it okay now clearly Randall's not paying them to then turn around and sell it at the same price he's gonna make a profit he's acting as a middleman okay is there evidence in the record about I know that they'd been hung out at mr. Randall's house and what evidence is there in the record about what the uses of maple are all of that sort of thing well I mean Randall himself testified about what the use of this bigger maple is and there's also testimony in the government's case that the point of this maple is that it's wood it's maple that's mainly used for musical instruments and things of that nature it's high-value wood that's that's the whole motivation for this whole scheme is there any indication he makes musical instruments no but there's his own testimony is that he resells it to people who do mill it for musical instruments he also had some testimony that he resells it to people who mill it for high-value automobiles for the veneers of their automobiles so I don't think I don't think mr. Randall ever challenged like the utility of this wood or even what his general business is this is just an illegal variant of his normal business practice he was having these boys go and harvest wood that he wasn't gonna go take himself but they were willing to go cut in the national forest he was certainly willing to buy it from them at least the jury could infer that from this record did he have permits that that they used or anything like well they well he did and that's that's you know yet further evidence that he knew that something was amiss he knew the boys had no permit and you need if you don't need a permit to cut it which apparently you don't you do need a permit to transport it that's the reg that's how it's regulated the boys had no permit so that should have been a flag one that because if this was legitimate business and this was legitimate wood why wouldn't the boys have a permit why would they put their whole venture at risk they wouldn't instead when they tell him that he doesn't they don't have a permit he says I'll use my permit and he goes and calls the mill and allows him to use his permit again this is evidence that he is part of this overall scheme to profit from this sale this sale of wood so I don't I think that there is more than just a strict buyer-seller relationship and I'd actually like to point out that even in the Johnson case that the circuit case judge would in that case recognized that one of the paradigm examples of being more than a buyer-seller is a consignment arrangement and counsel has conceded that there is evidence in this record that there was a consignment of wood to mr. Randall when the second tree was cut the pieces that he didn't want he rejected but he did take one piece didn't pay them up front said he was going to pay them later that's it er 236 that's a consignment transaction that right there is sufficient evidence to show that this is more than simply a buyer an arm's-length buyer-seller transaction so if you put all this together the jury could have certainly agreed with the defense but they didn't this was a jury question about the nature of this agreement and they found it on this record that it was sufficient to infer from just the nature of how they did business that he was in fact you know part of this conspiracy to I did not know my recollection is the jury was out for less than a day that that is my recollection with with respect to the Pinkerton problem that counsel has recognized I would like to point out that the out-of-circuit authorities that the council's wreck has cited to are contrary to this court's authority on this issue I direct your court to the Alano case which is cited in this case there is overwhelming evidence on the substantive counts that Mr. Randall was an aider and abettor of those counts he went out to the forest he marked the trees he told them how to cut them there's there was no doubt that as to the substantive counts he aided and abetted those counts and under a any error in the Pinkerton instruction was harmless of course was the was the question of whether or not there was a jury could find a conspiracy was that argued to the jury I'm sorry on the issue of whether or not there was a conspiracy was that argued to the jury oh sure oh sure I mean the whole their whole pitch was to the jury was well it was there was some of the I didn't know didn't really agree with them but it was mainly I had no idea this was stolen I thought this was the Reeves father's property I had no idea that we that this was stolen wood that was the real thrust of the defense it wasn't really the agreement it was I didn't know the wood was stolen now I think on this record see to see why the jury rejected that particular aspect of the defense but yes it was clearly argued to the jury on that point with respect to the sentencing enhancement the government has conceded that there's insufficient evidence to support an enhancement as a leader under this court's precedence but there's there's four criteria that can satisfy this two-point leadership enhancement and one of them is as a supervisor and whatever the court thinks about the sufficiency of him as an organizer of this conspiracy there can be no doubt that he supervised their activities again he gave them instruction on how to site he marked the trees for them and he gave them the dimensions of how to cut the trees properly that is that the dictionary definition of supervising the criminal activity if the court has no further questions thank you thank you your honor first of all with regard to the Olano case the Olano case did not have a Pinkerton instruction like we did that Pinkerton instruction referenced only overt acts in the conspiracy instruction itself it didn't allow Pinkerton to be used to impute vicarious liability to substantive counts with regard to counsel statement that this was more than a buyer-seller arrangement because it was clear that mr. Randall was going to be to resell it and because quote he knew that something was amiss I'd like to call your attention to United States versus Falcone the 1940 US Supreme Court case because both of those factors were present there the defendants were distributors or jobbers they were selling their sugar to people who would distill it and they knew that they it would eventually be sold to ultimate purchasers and in that case the defendants knew that something was amiss in fact the Supreme Court said they knew that there was a conspiracy out there nevertheless they reversed five convictions of conspiracy in that case holding that selling somebody even that you know they're going to resell it to benefit their conspiracy is not enough and knowing that something was amiss was not enough there has to be proof of membership in the agreement itself I would ask I think the question for the government that remains unanswered is similar to the question that the agreement where is mr. Randall's stake in the agreement thank you your honor thank you case just argued is submitted for decision
judges: Schroeder, McKeown, Callahan